Nixa RAMOS, et al.,
Plaintiffs, Appellants,

v.

ROCHE PRODUCTS, INC.,
Defendant, Appellee.

No. 90–2107.

United States Court of Appeals,
First Circuit.

Heard May 8, 1991.

Decided June 21, 1991.

**44**

A. Santiago–Villalonga with whom Nach-man & Fernandez–Sein were on brief, San-turce, P.R., for plaintiffs, appellants.

David A. Copus with whom Donald B. Ayer, James E. Anklam, Jones, Day Reavis & Pogue, Washington, D.C., Luis F. Anto-netti and Goldman, Antonetti, Ferraiouli & Axtmayer were on brief, Santurce, P.R., for defendant, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from a consolidated action in which plaintiffs-appellants Julie Rossy and Nixa Ramos have respectively alleged sexual discrimination and retalia-tion in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17.[1]

---

1. Section 2000e–2 reads in pertinent part:

§ 2000e–2. **Unlawful employment practices**
    **Employer practices**

(a) It shall be an unlawful employment prac-tice for an employer—

In August of 1988 the district court, after dismissing plaintiffs' claims of racial animus brought under 42 U.S.C. § 1981 and striking their request for a jury trial, dismissed their state law claims as time-barred and Ramos' sex discrimination claim for failure to exhaust administrative remedies. The court also granted defendant Roche Products' ("Roche's") summary judgment motion as to Rossy's sex discrimination claim but denied Roche's motion regarding Ramos' retaliation claim. *Ramos v. Roche Products, Inc.*, 694 F.Supp. 1018 (D.P.R.1988) (*Ramos* I), *vacated sub nom. Rossy v. Roche Products, Inc.*, 880 F.2d 621 (1st Cir.1989). On appeal by Rossy, we vacated the grant of summary judgment on her sex discrimination claim and remanded her case for trial. *Rossy, supra.*[2] From October 1–4, 1990, the district court held a bench trial on Rossy's claim of sex discrimination and Ramos' claim of retaliation. The court then entered judgment against both Rossy and Ramos. *Ramos v. Roche Products, Inc.*, No. 87–1442 (D.P.R. October 5, 1990) (*Ramos* II). This appeal ensued. We now affirm the conclusions of the district court.

## I. BACKGROUND

Although Rossy and Ramos have made different charges under Title VII, many of the facts are equally applicable to both of their cases. Both women were hired by Roche in 1976, the year Roche began its Puerto Rican operations. Roche manufactures prescription drugs including Valium and Dalmane. Ruben Freyre, who was later promoted to the position to which Rossy aspired, was also hired in that year. Rossy became one of four managers in the quality control department; these managers report to the director of the department, the position for which Rossy and Freyre were later to compete.[3] Ramos consecutively held four supervisor-level positions in the quality assurance section. Supervisors report to managers; often Ramos worked with and under Rossy.

In 1981 Roche reorganized the quality control department and named Freyre to the newly created position of quality assurance manager, shifting this responsibility from Rossy and, in turn, appointing her manager of administrative services. In January 1983 Roche promoted Freyre to director of quality control. Roche claimed that Freyre's college degree in chemistry, his work on the Valium and Dalmane projects, his attaining a Certificate of Quality Engineer ("CQE"), his incipient graduate work in industrial pharmacy and his "exceptional" job evaluations effectively trumped Rossy's college degree in biology, her advanced degrees in educational administration and law, her varied work experience and her consistently "excellent" job evaluations. When Freyre left Roche in

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
....
Section 2000e–3 reads in pertinent part:
**§ 2000e–3. Other unlawful employment practices**
**Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings**
(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he [that employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
...

2. On her initial appeal from summary judgment, Rossy did not challenge the order striking the jury request or the dismissal of her state law claim. Also, she failed to question the 1988 dismissal of diversity allegations or the dismissal of her spouse and their conjugal partnership as plaintiffs.

3. Roche has ten directors in its Puerto Rican plant. It has never hired a female director nor has it promoted a female to that position. We stated in *Rossy*, 880 F.2d at 623:

Roche has reported since 1971 that there exists an underutilization of women in the Officials and Managers 1 category, which includes all director positions. Rossy claims that at the time of Freyre's promotion the underutilization occurred with an 18.3% availability of women in the labor pool. Up to this point, there have never been any female directors at Roche.

1988, another man, Adalberto Ramirez, was chosen director of quality control.

Further, Roche bypassed Ramos to give Freyre's vacant position as manager of quality assurance to Victor Berberena and Freyre's former position as manager of quality control laboratories to Matti Munoz, in March of 1983.

Immediately after Freyre was promoted over Rossy in January 1983, Rossy filed a sex discrimination suit against Roche in superior court in Puerto Rico and named Ramos as one of three witnesses to the alleged discrimination against her. Although Ramos did not submit a signed affidavit to the Equal Employment Opportunities Commission ("EEOC") until September 30, 1983, she claimed that her support of Rossy caused Roche to retaliate, denying her the aforementioned managerial positions in March and reducing her job evaluation from "excellent" to "very good" in June of 1983. While Roche did not lower Ramos' salary, it allegedly assigned her to successively inferior positions, some unrelated to her training as a pharmacist.[4] Finally, after several probationary terms with unsatisfactory evaluations, Ramos was fired on July 17, 1989.

Rossy and Ramos brought separate suits against Roche in 1987.[5] Initially they rested their claims on Title VII of the 1964 Civil Rights Act, as well as 42 U.S.C. § 1981 and Puerto Rico Law 100, 29 L.P. R.A. § 146. As previously noted, the cases were consolidated and the latter two claims ultimately dismissed.

## II. CLEAR ERROR STANDARD

In a Title VII case we review the district court's findings of fact under a "clearly erroneous" standard. Fed.R.Civ.P. 52(a) provides in pertinent part:

In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclu-

sions of law thereon.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The Supreme Court has held that "a finding of intentional discrimination is a finding of fact." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "Treating issues of intent as factual matters for the trier of fact is commonplace." Hence, "discriminatory intent is a finding of fact to be made by the trial court; it is not a question of law and not a mixed question of law and fact...." *Pullman Standard, Div. of Pullman, Inc. v. Swint*, 456 U.S. 273, 288–89, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982). *See also Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 781 (1st Cir.1990); *Athas v. United States*, 904 F.2d 79, 80 (1st Cir.1990); *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir.1990) (acknowledging the superior "bird's-eye view" of the district court in Title VII fact-finding); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 392 (1st Cir.) (disavowing "Monday-morning quarterbacking" of factual issues by appellate court), *cert. denied*, — U.S. —, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).

This high standard does not permit a finding of clear error unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). And if there are "two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1511. *See also Jackson v. Harvard University*, 900 F.2d 464, 466 (1st

---

4. Ramos did, however, testify at trial that Rossy was among those managers who voted in April of 1984 to abolish Ramos' job as group supervisor and that Roche created another position for her instead of letting her go.

5. Although Ramos was not fired until 1989 after she had received three job ratings of "does not meet standards," she filed suit in 1987 alleging retaliatory acts by Roche resulting in her lowered evaluations, failure to be promoted to manager and transfer to lesser positions.

Cir.) (quoting *Anderson, supra*), *cert. denied,* —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990).

## III. REVIEW OF FACTS

### A. *Rossy's Sex Discrimination Charge*

There is no question that Rossy established a *prima facie* case for discrimination under Title VII according to the now-familiar *McDonnell Douglas* tripartite schema. Allegations of discriminatory promotion and firing, as well as retaliatory actions, have all been found compatible with the *McDonnell Douglas* rubric. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 107 (1st Cir.1988). *See also Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194 (1st Cir.1987) (Title VII covers denial of raises, unlawful discharge and retaliation for filing charges with EEOC.). *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). As the Supreme Court has instructed, this allocation of evidentiary burdens was "never intended to be rigid" but is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *quoted in White v. Vathally,* 732 F.2d 1037, 1040 (1st Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984).

Rossy demonstrated by a preponderance of the evidence that she was in a protected class, that she applied for an advertised job, that she was rejected, and that someone with her essential qualifications was hired. *Accord Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 70 (1st Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979).

In the second prong of *McDonnell Douglas,* "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). We have further held that when a plaintiff has proved by direct evidence, not inference, that "unlawful discrimination was a motivating factor in an employment decision," there is a greater burden on the employer. The latter must then "prove by a preponderance of the evidence that the same decision would have been made absent the discrimination." *Fields v. Clark University,* 817 F.2d 931, 937 (1st Cir.1987). Otherwise, the employer must merely articulate a plausible, nondiscriminatory reason for rejecting the plaintiff. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978) (per curiam) (plurality opinion). The employer's burden is one of production, not persuasion; it must articulate a valid reason for its decision but cannot be held to the "almost impossible burden of proving 'absence of discriminatory motive.'" *Menard v. First Sec. Services Corp.,* 848 F.2d 281, 287 (1st Cir.1988) (quoting *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987) (citations omitted)); *Oliver v. Digital Equipment Corp.,* 846 F.2d at 108–09 ("[D]efendant must offer more than vague, general averments of good faith" so that plaintiff can understand and try to rebut employer's reasons.). The plaintiff, however, retains the burden of persuasion; it "does not shift to the employer to convince the court that its stated legitimate reason for the employment decision was the true reason." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 245, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (citations omitted). *See also Burdine,* 450 U.S. at 256–58, 101 S.Ct. at 1095–96.

Roche insisted here that Freyre was not only better qualified and had higher job evaluations than Rossy, but that his qualifications—his honors degree in chemistry and his CQE—were more relevant to the position than were Rossy's degrees in law and educational administration. We have long held that "[o]ur role is not to second-guess the business decisions of an employer, imposing our subjective judgments of which person would best fulfill the responsibilities of a certain job." *Rossy,* 880 F.2d

at 625. *See also Petitti v. New England Tel. and Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990); *Keyes v. Secretary of Navy*, 853 F.2d 1016, 1024–26 (1st Cir.1988). The question is not whether the employer's action was wise, but "the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Loeb*, 600 F.2d at 1012 n. 6 (footnote omitted).

■ This reason can, however, be rebutted in the third prong of *McDonnell Douglas*. Should the defendant carry this burden, the plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a ... discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1826. At this juncture, the employer's reason is subject to scrutiny. "The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one." *Loeb*, 600 F.2d at 1012 n. 6.

Pretext can be exposed in several different ways. In another recent promotion case, *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court held that the petitioner

> might seek to demonstrate that respondent's claim to have promoted a better-qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position.... There are certainly other ways in which petitioner could seek to prove that respondent's reasons were pretextual. Thus, for example, petitioner could ... [submit] evidence of respondent's past treatment of petitioner....

*Id.* at 187–88, 109 S.Ct. at 2378–79. *See also Brown v. Trustees of Boston University*, 891 F.2d 337, 347 (1st Cir.1989) (Sex discrimination plaintiff could show employer's motive unworthy of belief or offer proof of another motive.). *See generally Connell v. Bank of Boston*, 924 F.2d 1169, 1182 (1st Cir.1991) (Bownes, J., dissenting and concurring) (interpreting *Burdine* to mean that plaintiff's *prima facie* case plus proof of pretext in employer's articulated reason for discrimination sufficient to avoid summary judgment).

Rossy attempted to demonstrate her superlative qualifications; however, she could offer no direct evidence of past discriminatory treatment by Roche. Rossy alleged that Freyre's evaluations were belatedly upgraded and Roche's job description was altered to conform to Freyre's specific qualifications. *Rossy*, 880 F.2d at 625. The district court, however, did not find Rossy's circumstantial evidence adequate to refute Roche's bona fide reasons for hiring Freyre. "Merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent...." *Dea v. Look*, 810 F.2d at 15. The plaintiff's burden of proving pretext may *not* be met "simply by refuting defendant[']s articulated reason." *White*, 732 F.2d at 1042. Although we may have come to the opposite conclusion, we cannot find clear error in the district court's failure to label Roche's reasons pretextual.

### B. *Ramos' Retaliation Charge*

Ramos' claim that her diminished evaluations, job placements incompatible with her qualifications and training, probationary status and ultimately her firing, resulted from retaliation also fits under the rubric of Title VII. To demonstrate a *prima facie* claim of retaliation, the plaintiff

> must show by a preponderance of the reliable evidence that (1) she engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the discharge.

*Hochstadt v. Worcester Foundation*, 425 F.Supp. 318, 324 (D.Mass), *aff'd*, 545 F.2d 222 (1st Cir.1976), *cited in Petitti*, 909 F.2d at 33. *See also Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 193 (1st Cir. 1990) (delineating *prima facie* case for retaliatory discharge).

Following the precepts of *McDonnell Douglas*, Ramos was able to make her *prima facie* case, even on the first round in the district court. *Ramos I*, 694 F.Supp.

at 1023–25. She was a member of a protected class, engaged in protected activity, i.e., serving as a witness in Rossy's sex discrimination suit. Her employer was aware of her protected activities; in fact, Roche reassured Ramos in February of 1983 that she would *not* suffer retaliation. She also endured alleged harassment on the job within a period closely following her protected activities and was subsequently discharged. Hence, a retaliatory motive could at least be reasonably inferred. *See Petitti, supra,* at 33–34.

■ Ramos' problem lies in the third prong of her retaliation claim—establishing the causal nexus between her protected activity and the alleged retaliation leading to discharge by Roche. The chronology itself is not entirely dispositive. Ramos' name was proffered as a witness for Rossy in February 1983, but she did not create and sign an affidavit for the EEOC attesting to any discriminatory employment practices at Roche until September 30, 1983, long after she was twice bypassed for promotion in March of that year. Roche maintained that Ramos was not qualified for these positions and had failed her CQE examination three times. Moreover, two other witnesses to Rossy's charges of discrimination could pinpoint no overt retaliation. One of them, Felix Carrillo, admitted that "he perceived in his own mind that [his] treatment was different" after he testified for Rossy, "but he couldn't honestly point his finger at anything in particular." He remained with the company for nine more years, leaving of his own volition.

Ramos also claimed that Roche's retaliatory acts affected her job evaluations and placements beginning in 1983. While her job as group supervisor had been eliminated by a consensus of managers including Rossy, Ramos retained her same salary despite repeated job changes, viewed by her as demotions. Especially after she was placed on probation, which was extended by Roche in lieu of termination, Ramos understandably felt harassed and humiliated by the treatment she received.[6] Still,

her accusations remain largely conclusory and lacking in the concrete documentation necessary to prove the causal link between her protected activity and her retaliatory treatment. *See DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.) (stressing need for causal link by reversing summary judgment to establish proof of causal connection for *prima facie* case of retaliation), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 797 (9th Cir.1982) (denying retaliation claim because of break in "the requisite causal link between the decision to implement the [company] policies and [plaintiff's] EEOC complaint").

Despite her anguish and distress, Ramos has not met her burden as plaintiff. Moreover, Roche has documented nonpretextual reasons for terminating Ramos' employment based on her inability or disinclination and ultimate failure to fulfill job assignments.

## IV. JURY TRIAL ISSUE AND TITLE VII

While the seventh amendment grants a trial by jury to any party seeking to enforce "common law" rights, the equitable rights sought under Title VII are generally not deemed to require trial by jury. For example, in *Olin v. Prudential Ins. Co. of America,* 798 F.2d 1 (1st Cir.1986), we stated, "[I]t is well established that Title VII, being essentially equitable in nature, does not carry with it the right to trial by jury." (Citations omitted). *Id.* at 7. *See also Del Valle Fontanez v. Aponte,* 660 F.Supp. 145, 148–49 (D.P.R.1987) (holding that Title VII allows a court to order only "appropriate equitable relief"). *But see Beesley v. Hartford Fire Ins. Co.,* 717 F.Supp. 781, 783 (*Beesley* I), *modified,* 723 F.Supp. 635 (N.D.Ala.1989) (upholding right of jury trial on Title VII sex discrimination case where requested monetary relief construed as legal remedy) (*Beesley* II). *See also Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)

---

6. She testified, *inter alia,* that she was assigned a desk in a small, hot room adjacent to the boilers in the plant. This testimony went uncontradicted.

(unanimously holding that jury trial is matter of right if cause of action analogous to suit at common law).

Since *Beesley,* the Supreme Court has evaluated the right to a jury trial in an essentially equitable action. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). The Court delineated a two-part test to distinguish between legal and equitable rights.

> "First, we compare the statutory action to the 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull, supra,* 481 U.S., at 417–418, 107 S.Ct., at 1835–36 (citations omitted). The second inquiry is the more important in our analysis. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. [33, 54–55, 109 S.Ct. 2782, 2796–2797, 106 L.Ed.2d 26] ... (1989).

*Id.* at 565, 110 S.Ct. at 1345 (footnote omitted). It then concluded that the remedy of backpay may constitute a legal right although monetary relief may also be viewed as equitable where the damages are, in fact, a form of restitution and are " 'incidental to or intertwined with injunctive relief.' " *Id.* at 570–71, 110 S.Ct. at 1347–48 (quoting *Tull,* 481 U.S. at 424, 107 S.Ct. at 1839).

■ Such issues as tenure and promotion would generally constitute equitable remedies. *See Brown v. Trustees,* 891 F.2d 337 (Grant of tenure is appropriate Title VII equitable remedy.). In *Jenouri v. WAPA–TV Pegasus Broadcasting,* 747 F.Supp. 118, 120–21 (D.P.R.1990), the district court did grant a jury trial to a Title VII plaintiff who requested compensatory damages.

■ In the instant case, the rights requested are primarily equitable-injunctive in nature, requiring promotion and reinstatement, including backpay. Hence, a jury trial does not seem to be required under *Terry.* Still, when we vacated the district court's ruling granting summary judgment to Roche against Rossy, we stated that on remand "[d]ifferences in qualifications between Rossy and Freyre can be considered by the *jury* in determining if the decision to promote Freyre ... was unreasonable or arbitrary." *Rossy,* 880 F.2d at 625 (emphasis added). It would appear that we were alluding generally to the role of a jury as fact-finder and not mandating a jury trial in this case. The First Circuit still adheres to its long-held rule precluding jury trials for equitable remedies under Title VII. This has been reinforced by the Court's analysis in *Terry.* Hence, the plaintiffs were not entitled to a jury trial under their Title VII equitable claims.

## V. ISSUE OF PENDENT STATE CLAIMS

■ In the first district court decision in 1988, Ramos' and Rossy's pendent state claims under 29 L.P.R.A. § 146 were dismissed as time-barred. *Ramos I,* 694 F.Supp. at 1027. These claims were not reintroduced in the court below at the time of the October 1990 trial on the plaintiffs' sex discrimination and retaliation claims.

The Supreme Court has specified that Title VII was designed to supplement, not supplant, existing laws and that Congress intended for an individual to pursue rights under both state and federal applicable statutes, as well as Title VII. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974). These appellants have, however, twice relinquished such an opportunity. First, their initial attempt to file under Puerto Rican law was adjudged time-barred. Second, they did not articulate this issue in the district court at their trial.

In the words of a recent opinion rejecting consideration of an issue for the first time on appeal, we stated:

> We have applied this proposition in well over a hundred cases since *Johnston v. Holiday Inns,* 595 F.2d 890 (1st Cir. 1979). We therefore are confined to determining whether or not this is a case "where a gross miscarriage of justice would occur".... [and where] the new

ground [is] "so compelling as virtually to insure appellant's success." *Id.* at 894 (citations omitted).

*United States v. McMahon,* 935 F.2d 397, 400 (1st Cir.1991) (per curiam) (quoting *Hernandez–Hernandez v. United States,* 904 F.2d 758, 763 (1st Cir.1990)). There is no compelling new issue to demand our reevaluation of the plaintiffs' state claims at this late date.

## VI. ISSUE OF AMENDED COMPLAINT

Appellants have listed as the second of their four issues whether the district court erred in denying their request to file an amended complaint detailing further acts of discrimination. There is, however, no elucidation or development of this issue in their brief. Current case law on our circuit would suggest that any issue which is merely mentioned but not briefed is considered waived on appeal. In *Pignons S.A. de Mecanique v. Polaroid Corp.,* 701 F.2d 1 (1st Cir.1983), we held that "an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed" and that an appellant "generally may not preserve a claim merely by referring to it in a reply brief or at oral argument." *Id.* at 3.

While plaintiffs' reference to their aborted amended complaint is headlined on page 1 of their brief under "Restatement of the Issues," it is never again mentioned in their forty-eight page brief. There is no reply brief. More recently, in another Title VII case, we have insisted on adherence to Fed. R.App.P. 28(a), which specifies that a brief must contain a full statement of issues presented and an accompanying argument with respect to them. *Brown v. Trustees,* 891 F.2d at 352. *See also Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734 (1st Cir.1990) ("It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."); *Ortega Cabrera v. Bayamon,* 562 F.2d 91, 102 n. 10 (1st Cir.1977) (any issue not argued on appeal deemed waived). We therefore consider the issue waived.

## VII. CONCLUSION

We affirm the conclusions of the district court in dismissing the charges of discrimination and retaliation. Costs on appeal to appellee.