7 F.3d 218
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Rashid PIGOTT, Plaintiff, Appellant,
v.
LYNN POLICE DEPARTMENT, et al., Defendants, Appellees.
 No. 93-1115.
 United States Court of Appeals,
First Circuit.
 September 27, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Rashid Pigott on brief pro se.
 D.Mass.
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Pro se prisoner Rashid Pigott appeals a district court order that dismissed his civil rights complaint sua sponte under 28 U.S.C. § 1915(d).[1] The complaint sought declaratory relief and damages from thirty-six defendants who allegedly violated 42 U.S.C. § 1983 and § 1985 in connection with Pigott's arrest and conviction for manslaughter and a separate care and protection proceeding concerning Pigott's son. The district court ruled that some of Pigott's claims were barred by either the statute of limitations, witness immunity, or because Pigott had failed to allege state action. The remaining claims were dismissed because Pigott failed to state a claim upon which relief could be granted. We affirm.
 
 I.
 
 2
 We begin with the relevant procedural background. On November 4, 1992, Pigott purportedly submitted his civil rights complaint and a letter requesting in forma pauperi § (IFP) application forms to the pro se clerk for the United States District Court for the District of Massachusetts.[2] By letter dated November 27, 1992, Pigott resubmitted his complaint with the standard IFP application and supporting affidavits. The district court received these items for filing on December 7, 1992. On December 31, 1992, the district court issued a memorandum and order which allowed Pigott's application to proceed IFP while simultaneously dismissing the complaint. Pigott filed a timely notice of appeal.
 
 
 3
 Pigott thereafter filed a motion to vacate the order of dismissal with a supporting memorandum, a motion to amend his complaint, and an amended complaint.[3] Pigott argued that the district court erred by dismissing his complaint without first affording him notice of its deficiencies and an opportunity to amend it to state viable claims. He also submitted evidence in support of his contention that the district court first received his complaint on November 4, 1992. That evidence consisted of a copy of Pigott's November 4, 1992 letter to the pro se clerk quoted above at n. 2 and a photocopy of a certified mail return receipt dated "11/4." The district court denied both motions on February 25, 1993. Pigott did not file another notice of appeal.[4]
 
 II.
 
 4
 The complaint asserted six causes of action which arose from events which transpired between December 4, 1989 and 1992. An understanding of the parties is necessary to comprehend Pigott's claims.
 
 
 5
 The complaint identified the defendants connected with Pigott's criminal conviction as the Lynn Police Department, Lynn police officers David Woumn, Chisholm, Chris Reddy, Richard Carrow, Rawston, W. Conrad, Wentzell, L.E. Desmarais, William Foley, John Doe, Sergeants Roach and Coppinger, Lieutenant Dennis Flynn, Massachusetts state troopers Elaine Condon, Mark Lynch, Mark Coleman, B. Windsor, and P. Zipper, chemist Kenneth Gagnon, Flemmings Towing Company, defense attorneys Christopher Skinner, M. Page Kelley, and Jeffrey Baler, defense investigator Stephen Turner, social worker Roberta Lerner, probation officer Stephen Mulloy, and Essex County superior court clerk James Leary.
 
 
 6
 The defendants named in connection with the events concerning Pigott's son include three social workers employed by the United Homes for Children foster care agency (Marilyn Heathman, Mrs. Richardson and Danielle Carviello), a social worker for the Massachusetts Department of Social Services (Pam Grey), Salem Hospital, two unnamed Salem Hospital security guards, and an unknown lawyer.
 
 
 7
 The complaint alleged the following facts. On December 4, 1989, while paying a business call to a residence in Lynn, Massachusetts, Pigott was struck by a glass, slashed with a butcher knife, and assaulted with other weapons. Pigott escaped his assailants, went to another address, and contacted the Lynn Police Department. Officers Chisholm, Woumn, and Sergeant Roach responded and arrested Pigott allegedly without cause. As a result of Pigott's arrest and immediate incarceration, Flemmings Towing Company towed Pigott's car. Despite what Pigott says were obvious injuries, the police did not take Pigott for medical treatment for approximately one hour and forty-five minutes.[5]
 
 
 8
 He was then returned to a cell in the Lynn police station and prevented from making a telephone call until he had been booked, fingerprinted, relieved of his clothing, and interviewed by trooper Condon and Lieutenant Flynn. Pigott alleged that Flynn and Condon threatened and coerced him into signing a statement, after which he was allowed to place a telephone call. Pigott's first cause of action alleged that the foregoing allegations established that he was illegally arrested, that his property was seized, and that he was deliberately denied medical care and legal representation in violation of his Fourth, Fifth, Sixth and Eighth Amendment rights.
 
 
 9
 Pigott further alleged that on the following day (December 5, 1989), he was arraigned in the Lynn district court on charges of first degree murder, assault and battery, and illegally carrying a firearm. He was released on bail and met with attorney Skinner, who assumed Pigott's defense. Pigott's second cause of action alleged that the Lynn Police Department violated his constitutional rights by getting involved in setting Pigott's bail. The complaint does not specify how or by whom this was accomplished.
 
 
 10
 Pigott returned to the Lynn Police Department on December 5, 1989 and attempted to file a complaint against the men who allegedly assaulted him on the previous day. Pigott alleged that the police refused to let him file his complaint and that officer Woumn threatened him with bodily injury for trying to do so. Pigott's third cause of action alleged that the Lynn Police Department and officer Woumn violated his right of access to the courts by refusing Pigott's application for a criminal complaint and failing to investigate the criminal activity Pigott tried to report.[6]
 
 
 11
 The complaint suggests that the criminal charges were pending against Pigott when his son was born on January 23, 1990. Pigott's appellate brief informs us that he is the unwed biological father of Majid Taggert. The complaint alleged that, shortly after the birth, social workers Pam Grey and Marilyn Heathman forcibly took Pigott's son from him while two Salem Hospital security guards restrained Pigott. Thereafter, social workers Heathman and Richardson allegedly told Pigott that they determined he was an unfit parent after consulting the Lynn Police Department. While the allegations on this point are particularly vague, Pigott alleges that he somehow became involved in a care and protection proceeding wherein he demanded custody of his son.[7]
 
 
 12
 Defendants Heathman, Richardson and Carviello allegedly denied Pigott visitation rights and refused to reveal the whereabouts of his son to him. Pigott also claimed that an unknown lawyer had a conflict of interest when she represented a third party who had an interest in Pigott's son in the care and protection proceeding while simultaneously prosecuting Pigott on other criminal charges that were ultimately dismissed. Pigott's fourth cause of action alleged that the conduct of these defendants violated his Fourth, Fifth and Fourteenth Amendment rights.
 
 
 13
 Pigott's criminal trial began on September 19, 1991. The complaint alleged that Lynn police officers Christopher Reddy, Richard Carrow, Rawston, W. Conrad, Wentzell, L.E. Desmarais, William Foley, and Sgt. Coppinger, Massachusetts state troopers Mark Lynch, Mark Coleman, Brian Windsor, and Paul Zipper, and chemist Kenneth Gagnon conspired to violate Pigott's civil rights by knowingly committing perjury and submitting false evidence at Pigott's criminal trial.[8] Pigott was convicted of manslaughter. He alleged that his defense attorney (Skinner) fraudulently attempted to persuade Pigott to plead guilty before trial and made slanderous remarks and misrepresentations that resulted in Pigott's conviction. Pigott's fifth cause of action alleged that defense attorney Skinner's malpractice and the police conspiracy at Pigott's trial violated Pigott's Fifth, Sixth and Fourteenth Amendment rights.
 
 
 14
 Pigott was interviewed by probation officer Stephen Mulloy following his conviction. The complaint alleged that Mulloy denied Pigott's request for counsel and threatened Pigott with indefinite imprisonment while referring to a civil action that Pigott's family had filed. Roberta Lerner, a social worker employed on Pigott's behalf, also interviewed Pigott. The complaint alleged that Lerner violated the terms of her employment, failed to assist Pigott in the care and protection case, and prepared a libelous report of her interview with Pigott.
 
 
 15
 Pigott further alleged that attorney Skinner waived his right to appeal his criminal conviction without Pigott's knowledge. Other defense attorneys (Kelley and Baler) also allegedly refused to pursue Pigott's direct appeal. Attorney Baler and Essex superior court clerk Leary are alleged to have procured the dismissal of Pigott's private counsel. The complaint does not state what Pigott's private counsel had been hired to do, nor what harm befell Pigott as a result of the alleged dismissal. Pigott further claimed that clerk Leary violated his right of access to the courts by refusing Pigott's pro se filings. Pigott's sixth cause of action alleged that the actions of defendants Mulloy, Lerner, Skinner, Kelley, Baler, and Leary violated his Sixth and Fourteenth Amendment rights.[9]
 
 
 16
 On October 15, 1991, Pigott was sentenced to prison for 4-15 years.[10] Over one year later, Pigott instituted the instant civil rights action. Faced with the barrage of claims presented by the complaint, the district court noted that under 28 U.S.C. § 1915(d), courts may dismiss IFP complaints sua sponte if the plaintiff's claim is based on an indisputably meritless legal theory or on factual allegations that are clearly baseless. See, e.g., Denton v. Hernandez, 112 S. Ct. 1728, 1733 (1992); Neitzke v. Williams, 490 U.S. 319, 327 (1989). The court then dismissed Pigott's claims against the Lynn Police Department, Flemmings Towing Company, and defendants Woumn, Chisholm, Roach, Flynn, and Condon as time-barred under the three-year statute of limitations that applies to civil rights actions in Massachusetts. See Street v. Vose, 936 F.2d 38 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992).
 
 
 17
 This ruling effectively barred Pigott's claims that these defendants arrested him without cause, deliberately denied him medical care and legal representation, and wrongfully seized his property on December 4, 1989. The district court reasoned that Pigott filed his complaint and IFP application on December 7, 1992, the date the district court received both items, and that these particular claims were thus brought three days late. The district court did not specifically address Pigott's claims that the Lynn Police Department engaged in bail tampering and, along with officer Woumn, violated Pigott's right of access to the courts on December 5, 1989. We assume that the court implicitly held that these claims were time-barred as well.[11]
 
 
 18
 The court further ruled that those defendants who allegedly presented perjured testimony at Pigott's trial were absolutely immune under Briscoe v. LaHue, 460 U.S. 320, 325 (1983), and that Pigott's claims against his defense attorneys were barred by Polk County v. Dodson, 454 U.S. 312 (1981), (holding that public defenders are not "state actors" for 42 U.S.C. § 1983 purposes). This ruling eliminated Pigott's fifth cause of action and that part of his sixth cause of action that rested on the alleged misconduct of Pigott's defense attorneys. The court also dismissed that part of Pigott's fourth cause of action that asserted claims against Salem Hospital, the two unnamed security guards, and the unknown lawyer on the ground that Pigott failed to allege state action. Finally, the court dismissed Pigott's allegations against probation officer Mulloy, Pigott's social worker (Lerner), and the four other social workers (Heathman, Richardson, Carviello and Grey) for failing to state sufficient claims upon which relief could be granted.
 
 
 19
 We note that Pigott's amended complaint attempted to cure some of the deficiencies identified in the district court's dismissal order, largely by simply alleging that more defendants conspired with the Lynn Police Department to violate Pigott's civil rights.[12] Pigott further alleged that defendants Heathman, Richardson and Carviello destroyed his relationship with his son by illegally refusing to allow them visits without cause. Pigott sought to remedy other claims with allegations purporting to establish state action.[13]
 
 III.
 
 20
 At the outset, we note that Pigott's brief on appeal makes no reference whatsoever to his claims against defendants Mulloy, Lerner, Turner, Leary, and the unknown lawyer (attorney Winn). He has therefore waived these claims and their dismissal will be upheld. The same can be said with respect to Pigott's claim that he was arrested without cause. To the extent Pigott's claims against the Lynn Police Department and officers Woumn, Chisholm, and Sgt. Roach rely on his December 4, 1989 arrest, his brief makes no mention of this claim, and we affirm its dismissal on the ground that Pigott has waived it. See, e.g., Frazier v. Bailey, 957 F.2d 920, 932 n. 14 & 15 (1st Cir. 1992); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).
 
 
 21
 As for the remaining claims, we review section 1915(d) dismissals for abuse of discretion, mindful that not every complaint that fails to state a claim upon which relief can be granted is subject to sua sponte dismissal for frivolousness under 28 U.S.C. § 1915(d). Denton v. Hernandez, 112 S. Ct. at 1734; Neitzke v. Williams, 490 U.S. at 331. A complaint or claim is "factually frivolous" when it alleges facts that are " 'clearly baseless' ", " 'fanciful' ", " 'fantastic' " or " 'delusional' ". Denton, 112 S. Ct. at 1733, (quoting Neitzke, 490 U.S. at 327, 325, 328). A claim may be said to be legally frivolous if it asserts a claim for which the defendant is clearly entitled to immunity, or a claim of infringement of a legal interest that clearly does not exist. Neitzke, 490 U.S. at 327.
 
 
 22
 In addition, "[w]e have squarely held that 'a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous' under section 1915(d)." Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992) (quoting Street v. Vose, 936 F.2d at 39). However, at least where there is any possible doubt, we cautioned district courts to issue an order to show cause to a plaintiff whose claims appear to be time-barred before dismissing a complaint sua sponte on statute of limitations grounds. Street v. Vose, 936 F.2d at 41, n. 5.
 
 IV.
 
 23
 Based on the principles just set forth, we conclude that Pigott's claims were properly dismissed, although our reasoning differs somewhat from that of the district court. Insofar as Pigott alleged that the nine Lynn police officers and other defendants who testified at his criminal trial committed perjury, Pigott concedes, as he must, that Briscoe v. LaHue, 460 U.S. 325, 329-46 (1983), entitles these defendants to absolute immunity from damages liability under 42 U.S.C. § 1983. However, the complaint also alleged that these defendants involved themselves in a conspiracy to violate Pigott's civil rights. See Complaint, p 44. Pigott continues to press this claim on appeal, and argues that there was a general police conspiracy to "railroad" him under which liability may attach under 42 U.S.C. § 1983 and § 1985. The district court did not specifically discuss Pigott's conspiracy claim, presumably because Pigott alleged no facts to support it, but we think this claim requires separate consideration.
 
 
 24
 We have previously observed in dicta that proper allegations of conspiracy might overcome an immunity claim. See Malachowski v. City of Keene, 787 F.2d 704, 711-12 (1st Cir.), cert. denied, 479 U.S. 828 (1986)(per curiam)(noting that such allegations could overcome city prosecutor's absolute immunity, and that prosecutorial immunity of juvenile delinquency officer who initiated delinquency proceedings might not extend to allegations that officer filed false delinquency petition as part of overarching conspiracy to deprive plaintiffs' of child custody). But "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact." Neitzke, 490 U.S. at 325. (emphasis supplied). Turning to the factual allegations, we note that Pigott's complaint contained only the most conclusory allegations of conspiracy. The complaint generally alleged that the defendants committed perjury and fabricated evidence from Pigott's December 4, 1989 arrest throughout his September 1991 trial. No description of the perjury is given and the allegedly fabricated evidence is not identified. The only specific factual allegation even relating to a possible conspiracy is Pigott's assertion that defendant Reddy and two prosecution witnesses (who are not named defendants) violated Mass. Rule Crim. Pro. 21 (governing sequestration of witnesses) during Pigott's criminal trial, but no detail is provided. See Complaint, p 34.
 
 
 25
 In fact, Pigott did not even assert that the perjury allegedly committed by these defendants resulted in his conviction. Rather, he claimed that defense counsel Skinner "maliciously slandered and misrepresented" him (again, without giving any specifics) and that this conduct was the direct cause of his conviction. Even liberally construed, this mish-mash of allegations fails to raise an inference that the named defendants agreed to deprive Pigott of his constitutional rights. See generally Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (discussing elements of conspiracy under 42 U.S.C. § 1983).[14]
 
 
 26
 Purely conclusory allegations of conspiracy are not adequate to state a claim. See Slotnick v. Stavisky, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978). Nevertheless, somewhat more caution is appropriate where dismissal is contemplated under section 1915(d), at least in those cases where it is not intended to give the plaintiff advance notice of the defect and the opportunity to amend. The issue is one of abuse of discretion and depends upon the facts.
 
 
 27
 In this instance we do not think further proceedings are warranted. Although we do not have to consider the propriety of the district court's denial of reconsideration (since Pigott did not appeal), we note that Pigott's amended complaint, filed after dismissal, makes additional allegations but still does not contain any facts that would support a conspiracy. Nor does Pigott's brief on appeal furnish any hint of facts that could support the conspiracy claim.
 
 
 28
 Even so, we might hesitate to sustain the dismissal without an opportunity to replead if we thought that there was any real risk of injustice. But Pigott's complaint is manifestly founded upon the delusion that anyone who has had any connection with the events described-the arrest, post-arrest treatment, trial, probation office inquiry, and child custody dispute-is a wrongdoer and in most cases a conspirator. A fair portion of these charges have to be insupportable, and if some nugget of truth lies buried under the rubble (and we stress that no claim is stated on these allegations), Pigott has only himself to blame.
 
 V.
 
 29
 Pigott concedes that his claims against his court appointed attorneys (Skinner, Kelley and Baler) are fatally deficient in that they failed to allege state action under 42 U.S.C. § 1983. See Polk County v. Dodson, 454 U.S. at 317 n. 4; Malachowski v. City of Keene, 787 F.2d at 710 ("A private attorney who is sued for actions allegedly taken as court-appointed counsel does not act under color of state law.") On appeal, Pigott argues that his amended complaint cured this deficiency by charging these defendants with conspiracy as well. This charge was also wholly conclusory. For the reasons already stated, we think the district court must be sustained.
 
 VI.
 
 30
 Pigott contends that his claims with regard to the care and protection proceeding are cognizable in federal court notwithstanding the domestic relations exception to federal jurisdiction. See generally Ankenbrandt v. Richards, 112 S. Ct. 2206 (1992)(describing exception). This claim challenges the seizure of Pigott's son by defendants Grey and Heathman (who were aided by the two unknown Salem Hospital security guards) and the frustration of Pigott's efforts to visit his son by defendants Heathman, Carviello, and Richardson. Pigott does not contend that the facts he has alleged against these defendants are sufficient to state a claim upon which relief could be granted. As the district court's dismissal order notified Pigott that his complaint was so deficient as to the four social worker defendants, and even the allegations in Pigott's amended complaint fail to make out viable claims against these defendants, we affirm the dismissal of Pigott's claims against social workers Pam Grey, Marilyn Heathman, Danielle Carviello, and Mrs. Richardson.
 
 
 31
 The district court may have erred in dismissing Pigott's claims against the two unnamed Salem Hospital security guards for lack of state action. The complaint identified defendant Pam Grey as an employee of the Massachusetts Department of Social Services and thus established her as a "state actor" for 42 U.S.C. § 1983 purposes. We may also assume that the Salem Hospital security guards and social worker Marilyn Heathman were also engaged in state action when they assisted Grey in restraining Pigott and seizing his son. See Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 259 (1st Cir. 1993)(" 'To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.' " ) (citations omitted)).
 
 
 32
 But the liability of the guards and Salem Hospital was predicated on Pigott's claim that the seizure of his son violated his constitutional rights. Pigott's complaint and amended complaint did little more than allege that Pigott had a son who was taken from him after he had been determined to be an unfit parent. Pigott has alleged no facts to suggest that this determination was wrong or procedurally defective. Since Pigott failed to allege sufficient facts to make out such a violation even after the district court's dismissal order notified him of this deficiency, his claims against the security guards and Salem Hospital were properly dismissed.
 
 VII.
 
 33
 Finally, we turn to those claims that were dismissed as legally frivolous because they appeared to be barred by the statute of limitations. The only claims that Pigott continues to press on appeal are his claims that the Lynn Police Department and officers Chisholm, Woumn, and Sgt. Roach exhibited deliberate indifference to his medical needs on December 4, 1989 and his claims that the Lynn Police Department engaged in bail tampering and, along with officer Woumn, violated his right of access to the courts on December 5, 1989.[15]
 
 
 34
 Pigott's claims that the Lynn Police Department engaged in bail tampering and violated Pigott's right of access to the courts by refusing to allow him to file a criminal complaint were without basis. Pigott was released on bail and, in stark contrast to Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987), on which Pigott relies on appeal, Pigott has not alleged that the police arranged to have his bail set so high that he could not make it. Nor has he described any other conduct that could be construed to violate his rights.[16]
 
 
 35
 Similarly, the right of access to the courts does not import an absolute right to institute criminal proceedings. Insofar as Pigott contends that the Lynn Police Department violated this right simply by refusing to accept his criminal complaint, he has alleged the violation of a legal interest that does not exist. Pigott further has not alleged any facts which show that officer Woumn's threats to harm him violated his federal rights.
 
 
 36
 Pigott's claim that officers Chisholm, Woumn, and Sgt. Roach exhibited deliberate indifference to his medical needs is a closer case. Pigott claimed that he was struck in the face with a glass, slashed with a butcher knife, and assaulted with other weapons. He allegedly suffered obvious injuries and informed these officers that he needed immediate medical attention. Pigott was incarcerated at the Lynn police station for one hour and forty-five minutes before he was taken for medical care. The complaint does not describe Pigott's injuries. It also does not say what treatment was required, although we are now told that Pigott required sutures. Further, the complaint does not specify what harm, if any, befell Pigott as a result of the seemingly brief delay between Pigott's arrest and treatment. Compare Matzker v. Herr, 748 F.2d 1142, 1147-48 (7th cir. 1984)(alleged three month delay in procuring medical and dental care stated viable claim).[17]
 
 
 37
 As we explained in Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992), § 1983 liability in a case like this requires proof of " 'deliberate indifference' " by "(1) an unusually serious risk of harm ... (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." We do not think that the facts in the complaint make out these elements. More important, we see no basis for believing that any amendment or particularization would solve the central deficiency, namely, that something more than temporary inattention or carelessness is needed for a constitutional claim of cruel and unusual punishment. Rather, what is required is a conscious refusal to take reasonable measures to deal in a timely fashion with very substantial harm or the threat of such harm.
 
 
 38
 Here, Pigott by his own version of events did not seek hospital care when he left the scene of the fight but went to another address. There is no hint that any permanent injury resulted from the delay. Individuals arrive at police stations and in emergency rooms with cuts and bruises every day; but true emergencies, requiring medical care without an instant's delay, are less commonplace. If this were an ordinary tort suit and negligence sufficed for liability, there might be an argument for requiring leave to amend-although what is alleged does not itself indicate negligence. But there is virtually nothing in the complaint to suggest cruel and unusual punishment, or any benefit from further pleadings.
 
 VIII.
 
 39
 Our conclusion makes it unnecessary to reach the statute of limitations issue on which the district court based its decision to dismiss claims relating to the arrest and immediate treatment of Pigott. We think that issue is a difficult one.
 
 
 40
 A number of circuits have held that a pro se complaint is timely so long as the necessary affidavit accompanies the filing of the complaint, one rationale being that the time spent in reviewing the affidavit and entering the IFP order is the court's responsibility. See, e.g., Dean v. Veterans Admin. Regional Office, 943 F.2d 667, 668-71 (6th Cir. 1991), vacated on other grounds, 112 S.Ct. 1255 (1992); Gilardi v. Schroeder, 833 F.2d 1226, 1233 (7th Cir. 1987); Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). Local Rule 4.5 in the district court suggests that that court would treat the complaint as timely filed if "accompanied by [the requisite] ... affidavit...." Pigott, however, did not accompany his complaint with the affidavit, and the rationale just described would have no application to his case.
 
 
 41
 On the other hand, Fed. R. Civ. P. 5(e) provides that the clerk is not to refuse papers for filing "solely because ... not presented in proper form...." One could argue that the omission of the affidavit is merely a formal defect-although the opposite view of the matter is also possible. One could also argue with some force that doubts about timeliness should be construed in favor of the plaintiff, although a plaintiff who waits till almost the end of the three year limitations period before filing anything can be said to assume some risk.
 
 
 42
 In all events, we do not think that the issue is decisive in this case and therefore do not decide it. However it is decided, it might be better if the Local Rule 4.5 gave clearer notice to litigants as to whether a complaint transmitted without the affidavit is deemed filed if accompanied by a request for IFP forms. A copy of this opinion will be transmitted to the appropriate authorities in the district court so that it may be considered whether an amendment is desirable.
 
 
 43
 Affirmed.
 
 
 44
 Enclosed please find Pro se, civil rights complaint. I request that you send me the required applications for filing this complaint in Forma Pauperis.
 
 
 45
 I also request that you send me the local rules for filing pamphlet for future reference.
 
 
 
 [1]
 28 U.S.C. § 1915(d) applies to complaints filed in forma pauperis. In relevant part, the statute provides that a court, "may dismiss the case if ... satisfied that the action is frivolous or malicious."
 
 
 [2]
 The letter, in relevant part, read as follows:
 Re: Filing of Civil Rights Complaint
 Dear Pro Se Clerk:
 This letter bears a crossed out time stamp of the district court dated November 4, 1992.
 
 
 [3]
 The motion to vacate invoked Fed. R. Civ. P. 60(a) and (b)(6)
 
 
 [4]
 Generally, the denial of a Rule 60(b) motion must be appealed separately. See 7 Moore's Federal Practice, p 60.30, p. 137 (1992-1993 Supp.). Here, however, Pigott's basic claims are inherent in Pigott's direct appeal of the dismissal order
 
 
 [5]
 The complaint does not describe Pigott's injuries. It simply alleges that Pigott was taken to the Atlantic Medical Care Center in Lynn Hospital. Pigott's appellate brief says that his injuries required sutures, although this was not stated in the complaint
 
 
 [6]
 Pigott's third cause of action further alleged that defendant Stephen Turner, a private investigator hired on Pigott's behalf, never met with him during the time Pigott's criminal case was pending
 
 
 [7]
 Pigott may be referring to a proceeding to commit his son to the custody of the Massachusetts Department of Social Services pursuant to M.G.L. c. 119, § 24
 
 
 [8]
 See Complaint, pp 5-7, 34, 44. Paragraph 34 specifically alleged that, "from December 4, 1989 up to and throughout trial[,]" the aforementioned Lynn police officers, state troopers, and chemist Gagnon, "all willfully and knowingly committed perjury, fabricated and tampered with evidence, and submitted and elicited a preponderance of maliciously intended false or otherwise distortions of facts and events." The complaint does not describe the witnesses' testimony nor the evidence that was supposedly fabricated
 
 
 [9]
 Mulloy allegedly violated Pigott's right to counsel by refusing to accede to Pigott's request for an attorney during his post-conviction interview. He is said to have violated Pigott's right of access to the courts by threatening Pigott with indefinite imprisonment in connection with a civil action Pigott's family had filed. Pigott's defense attorneys allegedly violated Pigott's constitutional rights by refusing to pursue a direct appeal of his criminal conviction and procuring the dismissal of private counsel. And, as noted above, clerk Leary allegedly violated Pigott's right of access to the courts by refusing Pigott's pro se filings. Pigott does not specify how social worker Lerner's libelous interview report and failure to aid Pigott in the care and protection case violated his constitutional rights
 
 
 [10]
 He received a concurrent 2 1/2 3 year term for the firearm charge
 
 
 [11]
 Thus, the district court dismissed Pigott's first, second, and part of Pigott's third cause of action as time-barred under the statute of limitations. Pigott's claim against investigator Turner for failure to keep appointments, which was also part of his third cause of action, was dismissed for failing to state a constitutional tort within the meaning of 42 U.S.C. § 1983
 
 
 [12]
 The amended complaint charged that Flemmings Towing Company, clerk Leary, probation officer Mulloy, attorney Nancy Winn, who had been previously identified as the "unknown lawyer" in Pigott's original complaint, and defense attorneys Skinner, Kelley and Baler were all involved in such a conspiracy. But it stated no facts in support of these allegations
 
 
 [13]
 For example, defendants Grey and Heathman were alleged to have seized Pigott's son for the state, while Salem Hospital was alleged to have violated Pigott's civil rights through a policy or custom when its security guards restrained Pigott
 
 
 [14]
 And while the complaint cites 42 U.S.C. § 1985, Pigott has not alleged the requisite discriminatory animus to state a claim under this statute. See Landrigan v. City of Warwick, 628 F.2d 736, 739 n.1 (1st Cir. 1980)
 
 
 [15]
 Pigott has presented no cogent argument with respect to his claims against Flemmings Towing Company, Elaine Condon, and Dennis Flynn. Accordingly, his claims against these defendants are waived. See, e.g., Ramos v. Roche Products, Inc., 936 F.2d 43, 51 (1st Cir.), cert. denied, 112 S. Ct. 339 (1991)(issue which is merely mentioned but not briefed is waived on appeal)
 
 
 [16]
 Pigott's allegation that attorney Skinner informed him that he was lucky to make bail because the Lynn police generally would have opposed it due to his race does not establish that the police violated his constitutional right to be free from excessive bail, for Pigott says nothing to show that his bail was excessive
 
 
 [17]
 The reason for the delay is not alleged. However, since Pigott alleged that he was not booked and fingerprinted until after he returned from the hospital, we may assume that the delay was not occasioned by these administrative procedures