**Carolyn M. GALLAGHER,
Plaintiff, Appellee,**

v.

**WILTON ENTERPRISES, INC.,
Defendant, Appellant.**

**No. 91–1767.**

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1992.

Decided April 24, 1992.

---

Gerald A. Golden with whom Brett G. Rawitz, Chicago, Ill., Kevin Light, Boston, Mass., Neal Gerber & Eisenberg, Chicago, Ill., and Choate Hall & Stewart, Boston, Mass., were on brief, for defendant, appellant.

Scott A. Lathrop, Boston, Mass., for plaintiff, appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

PER CURIAM.

Plaintiff-appellee Carolyn M. Gallagher sued defendant-appellant Wilton Enterprises, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and Mass.Gen.Laws Ann. ch. 151B. She alleged: that she was sexually harassed on the job by her supervisor; that she was fired for not engaging in sexual conduct with her supervisor; and that she was subjected to differential treatment on the basis of sex.

The claim under the Massachusetts statute was tried to a jury. The jury awarded plaintiff $105,750 for lost earnings and benefits (back pay); $40,000 for the present value of net loss of future earnings and benefits (front pay); and $20,000 for emotional distress. In its memorandum opinion and order denying defendant's renewed motion for directed verdict and motion for judgment n.o.v., the court found the Title

VII claim to be "moot in light of the judgment to be entered on the state-law claim."

There are two issues: (1) whether the district court erred in holding a jury trial; and (2) the sufficiency of the evidence. We affirm the district court on both issues.

## JURY TRIAL

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)). The touchstone of our inquiry is the Seventh Amendment,[2] which, while it does not apply to state court proceedings, nonetheless controls when a federal court is enlisted to adjudicate a claim brought pursuant to a state's substantive law. *See Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 536–38, 78 S.Ct. 893, 900–01, 2 L.Ed.2d 953 (1958), *overruled on other grounds, Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

The *Byrd* Court took pains to remind us that:

The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between the judge and the jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.

*Id.,* 356 U.S. at 537, 78 S.Ct. at 901 (footnote omitted). The Court spoke specifically to the reach of the Seventh Amendment in diversity cases in *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610–11, 9 L.Ed.2d 691 (1963):

We agree with respondent that the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength. Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

■ A federal court must look first to state law to determine the elements of the cause of action and the propriety of the remedies sought. This done, the court should turn to federal law to "characterize" the action and remedies as either legal or equitable.[3]

## II.

■ We, therefore, must determine the nature of an employment discrimination suit brought pursuant to Mass.Gen.Laws Ann. ch. 151B. Courts have routinely held that discrimination suits in general, and employment discrimination suits in particular, are analogous to either of two common-

2. The Seventh Amendment provides:
In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
U.S. Const. amend. VII.

3. If any legal claim exists, the Seventh Amendment mandates that a jury demand be honored. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469,

473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). In cases which combine legal and equitable claims, a jury must decide the former, including issues of fact common to both sets of claims. *See Tull v. United States,* 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987); *Curtis v. Loether,* 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009 n. 11, 39 L.Ed.2d 260 (1974). The bench can then pass upon the equitable claims. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959).

law causes of action. Many courts have characterized such cases as actions *ex delicto. See, e.g., Curtis v. Loether,* 415 U.S. 189, 195, 196 n. 10, 94 S.Ct. 1005, 1008, 1009 n. 10, 39 L.Ed.2d 260 (1974) (likening discrimination action "to an action for defamation or intentional infliction of mental distress" and suggesting that racial discrimination "might be treated as a dignitary tort"); *Hill v. Winn–Dixie Stores, Inc.,* 934 F.2d 1518, 1524 (11th Cir.1991) (analyzing federal-law action to redress employment discrimination as a tort for Seventh Amendment purposes); *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 440–41 (1st Cir.1989) (similar); *Pons v. Lorillard,* 549 F.2d 950, 954 (4th Cir.1977) (similar), *aff'd on other grounds,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *cf. Conway v. Electro Switch Corp.,* 402 Mass. 385, 523 N.E.2d 255, 256–57 (1988) (analyzing action under Mass.Gen.Laws Ann. ch. 151B as a tort). A few courts have suggested that employment discrimination cases may also be characterized as actions *ex contractu. See Hill,* 934 F.2d at 1524; *Pons,* 549 F.2d at 954. For our purposes, the distinction makes no difference: regardless of whether a claim under chapter 151B is viewed as sounding in tort or contract, the cause of action is traditionally "legal" and the imperatives of the Seventh Amendment therefore attach. *See Curtis,* 415 U.S. at 195, 196 & n. 10, 94 S.Ct. at 1009 & n. 10; *Hill,* 934 F.2d at 1524; *Santiago–Negron,* 865 F.2d at 440–41; *Pons,* 549 F.2d at 954.

The second, more important, inquiry focuses on the remedies sought in a particular case. Under chapter 151B, a plaintiff can pursue a wide variety of damages. The Massachusetts Supreme Judicial Court has held, for example, that the statute "afford[s] victims of discrimination the legal remedy of compensatory damages," *Conway,* 523 N.E.2d at 256, including damages for emotional distress. *See Brown v. Trustees of Boston Univ.,* 674 F.Supp. 393, 395 (D.Mass.1987), *aff'd in relevant part,* 891 F.2d 337 (1st Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Egger v. Local 276, Plumbers & Pipefitters Union,* 644 F.Supp. 795, 805

(D.Mass.1986); *College–Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587, 594–95 (1987); *Bournewood Hosp., Inc. v. Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 358 N.E.2d 235, 241–43 (1976). In egregious cases, the statute also affords victims the legal remedy of punitive damages. *See* Mass.Gen.Laws Ann. ch. 151B, § 9 (West Supp.1991); *see also Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 753 F.Supp. 406, 411–12 (D.Mass.1990) (awarding punitive damages).

The fact that state law provides monetary redress is suggestive, but not dispositive, in terms of Seventh Amendment analysis. Although an action for money damages is "the traditional form of relief offered in the courts of law," *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009, not every "award of monetary relief must *necessarily* be 'legal' relief." *Id.* (emphasis in original). A backpay award granted under Title VII, 42 U.S.C. §§ 2000e to 2000e–17 (1988), for instance, is frequently considered to be restitutionary in nature and, therefore, an example of monetary equitable relief. *See Great Am. Fed. Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 375 & n. 19, 99 S.Ct. 2345, 2350 & n. 19, 60 L.Ed.2d 957 (1979); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–21, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). Here, however, it seems clear that federal law characterizes the damages available under chapter 151B as falling at the "legal" end of the law/equity continuum.

Our circuit has held that compensatory damages in federal employment discrimination cases are, for Seventh Amendment purposes, legal remedies. *See, e.g., Perez–Serrano v. DeLeon–Velez,* 868 F.2d 30, 32–33 (1st Cir.1989); *Santiago–Negron,* 865 F.2d at 441. By and large, other courts agree that compensatory damages are not subsumed by equitable concepts of reinstatement and restitution. *See, e.g., Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 929 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982);

*Moore v. Sun Oil Co.*, 636 F.2d 154, 156 (6th Cir.1980). Similarly, compensatory damages for emotional distress are usually thought to comprise a legal remedy. *See Shah v. Mt. Zion Hosp. & Medical Ctr.*, 642 F.2d 268, 272 (9th Cir.1981); *Miller v. Texas State Bd. of Barber Examiners*, 615 F.2d 650, 654 (5th Cir.), *cert. denied*, 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *De Grace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980); *cf.* 22 Am.Jur.2d *Damages* §§ 261, 985 (1988). By the same token, federal law characterizes punitive damages as legal remediation for Seventh Amendment purposes. *See Curtis*, 415 U.S. at 197, 94 S.Ct. at 1010; *Moore*, 636 F.2d at 157.

In the face of this overwhelming array of authority, appellant raises one argument that must be answered. It asserts that the court was bound to follow prior precedent of the circuit holding that there is no right to a jury trial under Mass.Gen.Laws Ann. ch. 151B, § 9. In *Olin v. Prudential Insurance Co.*, 798 F.2d 1 (1st Cir.1986), we held:

> The court also properly rejected Olin's claim for a jury trial on the state claim for the relevant state statute, Mass.Gen. Laws Ann. ch. 151B, § 9, contains words ("[i]f the *court* finds") that the State Supreme Judicial Court has held signify a legislative intent to provide equitable, not legal, rights. *Nei v. Burley*, 388 Mass. 307, 312, 446 N.E.2d 674 (1983) (no right to jury trial under Mass.Gen.Laws Ann. ch. 93A, § 9, which contains language identical to that of ch. 151B, § 9).

*Id.* at 7–8 (emphasis in original).

The rule in this circuit is that, "panels are, by and large, bound by prior panel decisions closely in point." *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 945 F.2d 10, 12 (1st Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1290, 117 L.Ed.2d 514 (1992). Nevertheless, the force of this rule dissipates when "newly emergent authority, although not directly controlling, ... offers a convincing reason for believing that [an] earlier panel, in light of the neoteric developments, would change its course." *Id.*

The present situation fits comfortably within the exception. The *Olin* court spoke without the benefit of *Conway*, a case in which the Massachusetts Supreme Judicial Court not only described an action brought under chapter 151B as analogous to a common-law tort claim, *Conway*, 523 N.E.2d at 256–57, but also stated that chapter 151B "afforded victims of discrimination the legal remedy of compensatory damages." *Id.* at 256. Because *Conway* constitutes an authoritative basis for concluding that chapter 151B is analogous to an eighteenth-century legal cause of action providing legal remedies, *Olin* is no longer relevant to our inquiry. Since both the cause of action asserted under chapter 151B and the remedies sought below are legal in nature, the district court was correct in concluding that, given the plaintiff's timely demand, the Seventh Amendment required that a jury be empaneled.[4]

## SUFFICIENCY OF THE EVIDENCE

■ Defendant argues that the district court should have granted its motion for a directed verdict or in the alternative its motion for judgment n.o.v. Our standard of review is the same for both. We conduct a plenary review of the evidence and all reasonable inferences to be drawn from it in the light most favorable to the nonmovant. *Veranda Beach Club, Ltd. Partnership v. Western Surety Co.*, 936 F.2d 1364, 1383–84 (1st Cir.1991). The district court may grant a judgment n.o.v. only if it finds that the evidence could lead a reasonable person to only one conclusion.

---

**4.** Because this case required us to reexamine *Olin*, we would ordinarily have convened the en banc court. We have, however, in rare instances, where it has become reasonably clear that a prior precedent of this court was erroneously decided or is no longer good law, achieved the same result more informally by circulating the proposed panel opinion to all the active judges of the court for pre-publication comment. *See e.g., United States v. Bucuvalas*, 909 F.2d 593, 598 n. 9 (1st Cir.1990). While this practice is to be used sparingly and with extreme caution, we have employed it in the special circumstances of this case, with the result that the entire court has approved the overruling of *Olin* on the point at issue.

*Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 215 (1st Cir.1991). "A denial of judgment n.o.v. is reviewed *de novo*, which means that we use the same stringent decisional standards that control the district court." *Id. See also Pontarelli v. Stone*, 930 F.2d 104, 113 (1st Cir.1991).

■ The evidence, as read in the light most favorable to the plaintiff, can be summarized as follows. Plaintiff was hired by defendant as a sales representative for its Boston territory on November 12, 1984. Defendant sold cakeware and cake decorating accessories to retail stores and outlets; it also, through its sales representatives, ran cake decorating classes at some of its customer's stores. Because of her success as a sales person, plaintiff's territory was enlarged twice, first, to include Springfield, Massachusetts, Hartford, Connecticut, and Bangor and Portland, Maine. In 1986 her supervisor, Michael Olsen, the villain of the piece, expanded her territory to encompass all of New England because she "was doing a really good job." Plaintiff received a number of awards from the defendant for her sales performances: the "100 Percent Plus Club" for fiscal 1987; "High 5 Member" status in 1987 (achieving 105% or more of her sales quota); and a plaque for achievement of 100% of her sales quota for the first quarter of 1987. Plaintiff met or exceeded her sales quotas for every full quarter she was employed by defendant. Plaintiff received accolades from defendant's executive officers for her sales performances. Despite plaintiff's outstanding sales record she was fired without notice or warning on January 27, 1988, by her supervisor Michael Olsen.

Plaintiff testified that she was fired because of her refusal to allow Olsen to kiss, squeeze and hug her, as was his wont with other female sales representatives, and because she rebuffed his sexual advances. In answer to a question as to how Olsen conducted himself towards her, plaintiff testified: "Every time I met him, left him, he was always reaching out and squeezing me, hugging me, touching me. He always was kissing me. I'd always turn my face, so he would end up on my cheek." This behavior by Olsen started when he first became supervisor in 1985 and continued through the day he discharged her.

Plaintiff testified that in November of 1987 Olsen told her that "our personal relationship had better improve." She further testified that at another time, "he [Olsen] looked me straight in the face and he said that our relationship had better improve." Plaintiff interpreted the statements about improving "our relationship" as sexual advances.

On the day that she was fired, plaintiff picked up Olsen at the Providence, Rhode Island Airport and drove him to the Holiday Inn, where they both stayed. Olsen told her to meet him in the lounge after she had checked in. She did so, and, after she sat down, Olsen said: "Our relationship better improve." Plaintiff ignored the remark. Olsen then told her that she was fired as of the coming Friday. Plaintiff was shocked and just looked at Olsen, who said, "you know what it is, it's our relationship."

We agree with the district court that the testimony of plaintiff was sufficient for the jury to find defendant liable to plaintiff for sexual harassment on the job and that she had been subjected to differential treatment on the basis of her sex. To be sure there was evidence from which the jury could have found otherwise, but the evidence contrary to that of plaintiff was not such that it would lead a reasonable person to only the conclusion urged by defendant. *See Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d at 215. The credibility of the witnesses was for the jury. The case was properly submitted to the jury for its determination.

We affirm the district court's denial of defendant's motions for a directed verdict and judgment n.o.v.

Costs on appeal awarded to appellee.