Doukas v. Metropolitan Life Ins       CV-94-478-SD  02/21/95 P
                UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE


Susan K. Doukas


     v.                                    Civil No. 94-478-SD


Metropolitan Life Insurance
 Company


                        O R D E R


     In this civil action, plaintiff Susan K. Doukas seeks relief

under the Americans with Disabilities Act of 1990 (ADA), 42

U.S.C. §§ 12101-12213 (Supp. 1994), and the Fair Housing Act, 42

U.S.C. §§ 3601-3631 (1977 & Supp. 1994), as a result of

Metropolitan Life Insurance Company's (MetLife) denial of her

application for mortgage disability insurance.

     Presently before the court is defendant's motion to dismiss

plaintiff's ADA claims as barred by the statute of limitations

and her Fair Housing Act claim for failure to state a claim.

Plaintiff objects.  Also before the court is defendant's motion

for leave to file a reply memorandum, which is herewith granted.

## Background

Plaintiff Susan K. Doukas asserts that she was diagnosed with bipolar disorder[1] in 1983. She has been under a physician's care and has taken medication for her condition since that time. Doukas further asserts that she has not been hospitalized due to bipolar disorder since 1985.

Doukas alleges that in July of 1991 she applied for mortgage disability insurance with defendant MetLife for a condominium she planned to purchase. MetLife denied her application in a letter dated July 29, 1991, which allegedly stated that MetLife's decision was "influenced" by Doukas's medical history.

Doukas reapplied for mortgage disability insurance from MetLife on or about August 25, 1992. MetLife denied Doukas's application in a letter dated September 14, 1992, again indicating that its decision was influenced by her medical history.

---

[1]Bipolar disorder is a "mood disorder[] in which both manic and depressive episodes occur." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 209 (27th ed. 1988). Plaintiff alleges that bipolar disorder "is a condition believed to be caused by a chemical imbalance" and that it is "treatable by medication." Complaint ¶ 5.

<u>Discussion</u>

<u>1. Rule 12(b)(6) Standard</u>

When a court is presented with a motion to dismiss filed under Rule 12(b)(6), Fed. R. Civ. P., "its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

In reviewing the sufficiency of a complaint, the court accepts "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992). Applying this standard, the court will grant a motion to dismiss "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" <u>Id.</u> (quoting <u>Correa-Martinez v. Arrilaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

<u>2. The ADA Claims</u>

The Americans with Disabilities Act was enacted in 1990 and was intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals

3

with disabilities . . . ." 42 U.S.C. § 12101(b)(6).

The term "disability" is defined by the ADA to mean,

> with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Count I of plaintiff's complaint invokes Title III of the ADA, which establishes a prohibition against discrimination by public accommodations. Title III provides, in pertinent part, that

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The discrimination prohibited in section 12182(a) is defined to include

> the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered
> . . . .

4

42 U.S.C. § 12182(b)(2)(A)(i).

The applicability of Title III to insurance companies is limited by Title IV of the ADA, which states, inter alia,

> Subchapters I through III of this chapter [Titles I through III of the Act] . . . shall not be construed to prohibit or restrict--
>     (1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law;
>         . . . .
> Paragraph[] (1) shall not be used as a subterfuge to evade the purposes of subchapters I and III of this chapter.

42 U.S.C. § 12201(c).

It is plaintiff's contention that MetLife violated section 12182(b)(2)(A)(i) by denying her September 1992 application for mortgage disability insurance.[2] Plaintiff further contends that MetLife's "actions in denying plaintiff's application for mortgage disability insurance in September 1992 are inconsistent with N.H. RSA § 417:4(VIII)"[3] and "are not based on sound

---

[2]The court notes that plaintiff's ADA claims are limited to MetLife's September 1992 denial of her application for mortgage disability benefits because Title III did not become effective until 18 months after the Act's July 26, 1990, enactment.

[3]RSA 417:4, VIII (1991 & Supp. 1993) prohibits unfair discrimination by the insurance business in establishing the terms and conditions of any contract of insurance.

actuarial data and are therefore a mere subterfuge used to evade the purposes of the [ADA]."  Complaint ¶¶ 35-36.


### a.  Statute of Limitations

Title III of the ADA does not contain a specific limitations period.  "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  This process was endorsed by Congress in 42 U.S.C. § 1988(a),

> which directs the court to 1) follow federal
> law if federal law provides a limitations
> period; 2) apply the common law, as modified
> by state constitution or statute, if no
> limitations period is provided by federal
> law; but 3) apply state law only if it is not
> inconsistent with the Constitution and laws
> of the United States.

Hickey v. Irving Indep. Sch. Dist., 976 F.2d 980, 982 (5th Cir. 1992).  See also Burnett v. Grattan, 468 U.S. 42, 47-48 (1984) (describing the three-step process set forth in § 1988); Wilson, supra, 471 U.S. at 267 (same).

Federal law does not provide a limitations period in this case.[4]  Accordingly, this court's analysis begins with the

---

[4]With respect to the first prong of this three-part analysis, the court notes that on December 1, 1990, Congress

6

selection of "the most appropriate" or "the most analogous" state statute of limitations applicable to plaintiff's claims. Wilson, supra, 471 U.S. at 268; Owens v. Okure, 488 U.S. 235, 239 (1989). To accomplish this task, the court "must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." Wilson, supra, 471 U.S. at 268.

The court finds that a claim for discrimination brought under the ADA is best characterized as a claim for personal injury. See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656, 661 (1987) (characterizing discrimination as "a fundamental injury to the individual rights of a person"); Hickey, supra, 976 F.2d at 983 ("As the Supreme Court has recognized, claims for discrimination are essentially claims for personal injury.") (citing cases). Accordingly, the most "appropriate" or "analogous" statute of limitations is one that applies to personal injury actions.

The parties have identified two statutes of limitations that

---

enacted, as part of the Judicial Improvements Act of 1990, a uniform statute of limitations for federal civil actions. Said statute provides, "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658 (1994). The ADA was enacted prior to § 1658 and therefore remains subject to the analysis set forth in § 1988(a).

7

could apply to plaintiff's ADA claims.  Defendant contends that the most appropriate statute of limitations is the 180-day period contained in New Hampshire's "Law Against Discrimination," Revised Statutes Annotated (RSA) 354-A, whereas plaintiff asserts that the three-year statute of limitations set forth in RSA 508:4 is the most appropriate statute.  The court examines each option in turn.

### b.  RSA 354-A

New Hampshire's Law Against Discrimination, like the ADA, prohibits discriminatory practices in places of public accommodation because of an individual's physical or mental disability.  Compare RSA 354-A:17 with 42 U.S.C. § 12182.

RSA 354-A creates an administrative scheme to handle complaints of discrimination in employment, in places of public accommodation, and in housing accommodations.  This scheme is administered by the New Hampshire Commission for Human Rights.

The statute requires a "person claiming to be aggrieved by an unlawful discriminatory practice [to] make, sign and file" a complaint with the Commission "within 180 days after the alleged act of discrimination."  RSA 354-A:21, I, III.  The Commission is thereafter charged with investigating the complaint, a process that is geared toward conciliation, resolution, and settlement of

the dispute between the parties. RSA 354-A:21, II.

Under RSA 354-A, a complainant is not entitled to forego the administrative process and proceed directly to state court. Further, although complainant is entitled to seek judicial review of an adverse order by the Commission, that review is limited. See RSA 354-A:22 (describing judicial review and enforcement procedures). The statute further provides that "[i]f the complainant brings an action in federal court arising out of the same claims of discrimination which formed the basis of an order or decision of the commission, such order or decision shall be vacated and any appeal therefrom pending in any state court shall be dismissed." RSA 354-A:22, IV.

In Burnett v. Grattan, 468 U.S. 42 (1984), the Supreme Court addressed the question of whether a statute of limitations embodied in a state administrative scheme should be applied to a federal civil rights action. After detailing the numerous differences between a civil rights action brought in federal court and a state administrative proceeding, the Court held that it would be inappropriate to borrow the six-month statute of limitations from an administrative scheme that "encourages conciliation and private settlement through the [state] agency's intervention in live disputes." Id. at 54. Instead, the Court affirmed the court of appeals' decision to apply the state's "3-

9

year statute of limitations for all civil actions for which the [state] Code does not otherwise provide a limitations period." Id. at 45-46.

This court finds the reasoning in Burnett to be equally applicable here. There are numerous distinctions between the administrative process initiated under RSA 354-A when a complaint of discrimination is filed with the New Hampshire Commission for Human Rights and the judicial process initiated by filing a civil complaint in federal court under the ADA.

The court finds it significant that Title III of the ADA creates a private right of action, whereas a complainant under RSA 354-A must go through an administrative process prior to obtaining judicial review. Further, the burden of pursuing a private right of action under the ADA is much greater than the burden of filing a complaint of discrimination with the New Hampshire Commission for Human Rights, which is thereafter obligated to conduct an investigation into the circumstances surrounding the complaint. These differing burdens are significant to the determination of whether RSA 354-A's 180-day statute of limitations should be applied to plaintiff's ADA claims. E.g., Burnett, supra, 468 U.S. at 50-52.

The court also finds that the language of the ADA is much broader than that of RSA 354-A. The more expansive definition of

10

discrimination under Title III of the ADA means that some ADA claims will be more difficult to identify and evaluate prior to the filing of a civil action. The court finds that requiring individuals to identify a violation of their civil rights under the ADA, evaluate whether that violation warrants the initiation of a federal action, and actually initiate the suit within 180 days of the discriminatory conduct complained of is inconsistent with the ADA's broad objectives.

As a result of these differences, the court finds that the 180-day limitations period set forth in RSA 354-A is not the most appropriate state statute of limitations to apply to plaintiff's ADA claims.

### c. RSA 508:4

RSA 508:4 is New Hampshire's residual or general personal injury statute of limitations. It provides, in relevant part, "Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of . . . ." RSA 508:4, I (Supp. 1993).

The court finds that RSA 508:4, I, is the statute of limitations applicable to claims most analogous to plaintiff's ADA claims. The court further finds that the application of RSA

11

508:4 to plaintiff's ADA claims is not inconsistent with any federal law or policy.  The court therefore rules that plaintiff's ADA claims are subject to the three-year limitations period in RSA 508:4.  Defendant's motion to dismiss those claims as barred by the statute of limitations is accordingly denied.


3.  The Fair Housing Act Claim

In Count III of her complaint, plaintiff alleges that MetLife's denial of her application for mortgage disability insurance because of her handicap violated section 805 of the Fair Housing Act, 42 U.S.C. § 3605.

Section 3605 provides, in relevant part, "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . handicap . . . ."  42 U.S.C. § 3605(a) (Supp. 1994).

The term "residential real estate-related transaction" is defined as

> any of the following:
>   (1)  The making or purchasing of loans or providing other financial assistance--
>     (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or

12

            (B) secured by residential real estate.
          (2) The selling, brokering, or appraising
        of residential real property.

42 U.S.C. § 3605(b).

Defendant asserts that Doukas's Fair Housing Act claim fails to state a claim against MetLife because said company is not "an entity whose business includes engaging in residential real estate transactions."  Defendant's Motion to Dismiss at 13.  In support thereof, defendants cite, inter alia, NAACP v. American Family Mut. Ins. Co., 978 F.2d 287 (7th Cir. 1992), cert. denied, 113 S. Ct. 2335 (1993), in which the Seventh Circuit held that redlining[5] by insurance companies does not violate section 3605 because property and casualty insurance do not constitute "financial assistance" as that term is used in the Fair Housing Act.

Plaintiff attempts to distinguish this case from American Family by distinguishing casualty and property insurance from disability insurance.  The court finds, at least with respect to the Fair Housing Act, that this is a distinction without a difference.

Mortgage disability insurance is insurance designed to help

---

[5]"'Redlining' is charging higher rates or declining to write insurance for people who live in particular areas (figuratively, sometimes literally, enclosed with red lines on a map)." American Family, supra, 978 F.2d at 290.

13

the insured meet mortgage payments in the event the insured becomes disabled. See BLACK'S LAW DICTIONARY 462, 805 (6th ed. 1990). Although such insurance is clearly a form of financial protection against the loss of one's home due to a period of disability, the court finds, in the context of section 3605, that mortgage disability insurance is not a form of "financial assistance" for purchasing or maintaining a dwelling. MetLife's motion to dismiss Count III of plaintiff's complaint for failure to state a claim is therefore granted.

## Conclusion

For the reasons set forth herein, defendant's motion to dismiss is (1) denied as to Counts I and II and (2) granted as to Count III.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 21, 1995

cc:  Lee A. Perselay, Esq.
     William D. Pandolph, Esq.

14