Rowe v. Foster's Daily Democrat        CV-94-623-SD   08/24/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Mari-Beth McGuinn Rowe


        v.                                    Civil No. 94-623-SD

Foster's Daily Democrat


O R D E R

In this civil action, plaintiff Mari-Beth McGuinn Rowe alleges defendant Foster's Daily Democrat violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., when it terminated her employment on June 22, 1990.  In conjunction with said federal claim, plaintiff presents allegations under New Hampshire common law for (1) wrongful discharge; (2) intentional and negligent infliction of severe emotional distress, and (3) enhanced compensatory damages.  Plaintiff further alleges defendant's conduct violated New Hampshire Revised Statutes Annotated (RSA) 354-A.

Presently before the court are defendant's motion for partial summary judgment as to plaintiff's state-law claims and defendant's motion to strike jury demand, to which plaintiff objects accordingly.

## Background

On or about September 12, 1987, Rowe began her employment with Foster's Daily Democrat as an account representative selling classified advertisements. Complaint ¶¶ 10-11. At the time of her termination on June 22, 1990, Rowe held the position of Account Representative for Retail Sales. Id. ¶ 11.[1]

Rowe prepared a written charge of discrimination on August 24, 1990, which was filed with the New Hampshire Commission for Human Rights (NHCHR) and the Equal Employment Opportunity Commission (EEOC) on September 10, 1990. See Charge (attached as Exhibit A to Plaintiff's Objection). Said charge was grounded on allegations of sexual harassment in the workplace. On October 5, 1990, plaintiff amended her original charge to include a claim for sex discrimination, see Amended Charge (attached as Exhibit A to Objection), which was filed with the NHCHR on October 10, 1990.

At the time plaintiff filed her charges with the NHCHR, budgetary constraints had resulted in a "large backlog of cases" with "each investigator carr[ying] a very large load." September 14, 1990, letter from NHCHR (attached as Exhibit B to

_____

[1]Although irrelevant to resolution of the motions sub judice, the court notes the dispute among the parties regarding whether this semantic change constitutes a "promotion". See Complaint ¶ 11; Answer ¶ 11.

2

Objection).  In concrete terms, Rowe was informed "it [the backlog] means that there is usually a very long wait for the case to be picked up for investigation."  Id.  This advice proved prescient, as Rowe subsequently received letters dated March 5, 1991 (attached as Exhibit B to Objection), and January 20, 1992 (attached as Exhibit C to Objection), indicating that the "backlog" was "slowly but surely" being reduced.  No communication from the NHCHR ever informed Rowe that she could have requested a "right-to-sue" letter from the EEOC 180 days after filing her charge or that the statute of limitations for her state-law based, nondiscrimination claims may continue to run despite the pendency of the NHCHR's administrative review.

Finally, on June 1, 1994, Rowe was informed that a pre-determination conference regarding her charges was scheduled for June 22, 1994, four years to the day from her termination.  See Letter of June 1, 1994 (attached as Exhibit D to Objection).  Subsequent to said conference, with her charges still outstanding, Rowe, who until this time was proceeding without counsel, obtained an attorney.  Upon request, a right to sue letter was issued on October 7, 1994.  Two months later, plaintiff filed suit in this federal court.

## Discussion

3

## 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Maldonado-Denis, supra, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of

4

material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party.  Maldonado-Denis, 23 F.3d at 581.  In other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'"  Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)].  A "material" issue is one that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

Although summary judgment is inappropriate when a trialworthy issue is raised, "[t]rialworthiness necessitates 'more than simply show[ing] that there is some metaphysical doubt as to the material facts.'"  National Amusements, supra, 43 F.3d at 735 (quoting Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (alteration in National Amusements).  Thus, "'[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the

5

truth which a factfinder must resolve . . . .'" Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations . . . rank speculation . . . [or] improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

2. Defendant's Motion for Partial Summary Judgment (document 4)

Plaintiff's complaint purportedly sets forth five distinct grounds for redress, all of which, with the exception of her Title VII claim, find their basis in New Hampshire state law.

a. RSA 354-A

"RSA 354-A creates an administrative scheme to handle complaints of discrimination in employment, in places of public accommodation, and in housing accommodations. This scheme is administered by the New Hampshire Commission for Human Rights." Doukas v. Metropolitan Life Ins. Co., 882 F. Supp. 1197, 1200 (D.N.H. 1995). As such, RSA 354-A, as a matter of law, only serves as a vehicle, rather than an independent avenue, for

6

bringing an otherwise uncognizable claim of discrimination in New Hampshire state court. See RSA 354-A:21 ("Any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign, and file with the commission a verified complaint in writing . . . .") (emphasis added); RSA 354-:22 (providing mechanism for judicial review subsequent to NHCHR prior determination).

This court has previously ruled that

> the plain language of RSA 354-A leads the court to conclude that the statute does not create a private right of action for individuals aggrieved by unlawful discriminatory practices. Instead, under RSA 354-A, such individuals are limited to seeking relief through the administrative process created by the statute and to obtaining judicial review of the results thereof in state court.

Tsetseranos v. Tech Prototype, Inc., ___ F. Supp. ___, ___, Civ. No. 93-676-SD, 1995 WL 427931, at *10 (D.N.H. Apr. 10, 1995). No intervening argument or rule of law has been advanced or uncovered which would call said finding into doubt.[2]

---

[2]The court notes, in fact, that a recent order out of the Sullivan County (New Hampshire) Superior Court enhances this court's understanding. See Hathaway v. The Butcher Block, Inc., No. 94-C-015, slip op. at 1-2 (Sullivan Cty. Super. Ct. June 1, 1994) ("Although RSA chapter 354-A empowers the State Commission for Human Rights to eliminate and prevent employment discrimination, it does not provide a private cause of action based upon its violation.") (attached to Defendant's Motion for Partial Summary Judgment).

Accordingly, plaintiff's claim under RSA 354-A (Count V) must be and herewith is dismissed with prejudice.

####       b.   Statute of Limitations

Although both parties agree that plaintiff's common-law claims are subject to the three-year statute of limitations set out in RSA 508:4, I,[3] whether this court should toll the running of said limitations statute is the matter in dispute.

Defendant asserts that Rowe's state-law claims "are all based on acts which allegedly occurred on or before [June 22, 1990]" and are thus foreclosed by RSA 508:4, I.  Defendant's Memorandum of Law at 4.  Plaintiff, however, argues that barring her state-law claims under the circumstances presented herein

---

[3]Said statute provides,

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I (Supp. 1994).

8

would work an "inequitable result." Moreover, "the interest[s] of judicial economy, convenience and fairness" would be best served by tolling the limitations period and allowing plaintiff to bring her "state and federal claims . . . in a single action." Plaintiff's Memorandum of Law at 2, 5.[4]

Whether it would be appropriate to toll the limitations period requires the court to consider both the nature of the causes of action for which tolling is sought as well as New Hampshire's specific tolling rules. See generally Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462-66 (1975).

### (1) Separate and Independent Claims

The Supreme Court has noted that "[f]ederal courts have typically extended equitable relief only sparingly." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Indeed, the Court acknowledged that it has historically allowed equitable tolling only "in situations where the claimant has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by [her] adversary's misconduct into allowing

---

[4]Although sound principles of law generally encourage, and indeed often require, a "one action" approach to litigation, it is sufficient to note that this goal could have been attained by means other than tolling the limitations period. See infra note 6 (discussing Title VII procedural prerequisites).

9

the filing deadline to pass." Id. (footnotes omitted). Similarly, "when Congress intended to establish a remedy separate and independent from other remedies that might also be available, a state rule which does not allow a plaintiff to litigate such alternative claims in succession, without risk of a time bar, is not 'inconsistent'" with an established federal scheme of relief. Board of Regents v. Tomanio, 446 U.S. 478, 489 (1980); see also Johnson, supra, 421 U.S. at 459 ("'[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.'" (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 48 (1974)) (alteration in Johnson).

Acknowledging the weight of this federal precedent, plaintiff argues that her "claim of sexual harassment and retaliatory termination bears distinct similarity to, and to a large extent, arises out of, a common law theory of wrongful termination." Plaintiff's Memorandum of Law at 4. Furthermore, "evidence used to prove her claim of a Title VII violation overlaps the evidence necessary to prove that she was wrongfully terminated." Id. Thus, the argument continues, plaintiff's federal and state law remedies are not "separate, distinct, and independent" as contemplated by Johnson, supra.

10

Whether, and to what extent, the evidence necessary to support plaintiff's Title VII claim overlaps with the evidence required for her state-law claims is inapposite to the determination of whether said forms of relief are "separate, distinct, and independent."  See <u>Reese v. Emeryville Fire Dep't</u>, 746 F. Supp. 987, 988 (N.D. Cal. 1990) (acknowledging Supreme Court dicta "that *all* causes of action under the Civil Rights Acts 'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law'" (quoting <u>Burnett v. Grattan</u>, 468 U.S. 42, 50 (1984))).  Of more particular relevance is the nature of permissible recovery and whether any prerequisites exist for filing suit.  See <u>Johnson</u>, <u>supra</u>, 421 U.S. at 460.

In contradistinction to plaintiff's Title VII claims, the claims of wrongful termination and emotional distress allow for both money damages and the ability to bring suit directly without a preliminary determination by an administrative body.  Accordingly, the court finds and rules that plaintiff's Title VII claim is an avenue of relief that is "separate, distinct, and independent" from her state-law claims.

### (2) Principles of Equitable Tolling

It is settled law that "[a]n administrative proceeding does

11

not toll the limitations period unless the proceeding is a mandatory prerequisite to filing suit." Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 978 (Fed. Cir. 1994) (citations omitted); see also Brighton Village Assocs. v. United States, 31 Cl. Ct. 324, 332 (Cl. Ct. 1994) ("the pursuit of an elective remedy does not obviate the need to commence suit"). Just last year, the New Hampshire Supreme Court adopted these general principles as the law in New Hampshire. See New Hampshire Div. of Human Servs. v. Allard, 138 N.H. 604, 606, 644 A.2d 70, 72 (1994) ("the limitations period is not tolled during a pending administrative proceeding unless that proceeding is a prerequisite to pursuit of the civil action").

Plaintiff's complaint alleges claims under state law for wrongful termination, intentional and negligent infliction of severe emotional distress, and enhanced compensatory damages, as well as a claim of discrimination initiated pursuant to RSA 354-A.[5] Although "a [RSA 354-A] complainant is not entitled to forego the administrative process and proceed directly to state court," Doukas, supra, 882 F. Supp. at 1200, this restriction is solely limited to complaints of discrimination or harassment, not

_____

[5]In part 2.a. of this order, the court dismissed plaintiff's RSA 354-A claim, and thus only the wrongful termination, emotional distress, and enhanced compensatory damages claims will be considered in the equitable tolling calculus.

12

all claims that may arise from an employee's termination, <u>accord</u> RSA 354-A:21 ("Any person claiming to be <u>aggrieved by an unlawful</u> <u>discriminatory practice may make, sign and file</u> with the commission a verified complaint in writing . . . .") (emphasis added); JEFFREY L. HIRSCH AND CAROL ANN CONBOY, LABOR AND EMPLOYMENT IN NEW HAMPSHIRE § 4-8(a), at 171 (1992) ("employees who believe they are <u>victims of illegal discrimination may file complaints against</u> <u>employers</u> with the New Hampshire Commission for Human Rights . . . .") (emphasis added).

It is precisely because of this distinction between those claims that must be initiated through the administrative process --Title VII claims and RSA 354-A-assisted actions for discrimination--and those that may be brought properly in state court in the first instance--such as wrongful termination and emotional distress--that plaintiff's argument cannot defeat defendant's motion. <u>See</u>, <u>e.g.</u>, <u>Linville v. Hawaii</u>, 874 F. Supp. 1095, 1105 (D. Haw. 1994) (plaintiff's state-law claims for negligent and intentional infliction of emotional distress as well as violation of Hawaii's law prohibiting discriminatory employment practices ruled "separate, distinct and independent from her Title VII claims . . . [and thus] the grievance . . . filed with the EEOC did not toll the statute of limitations for these claims"); <u>EEOC v. Domino's Pizza, Inc.</u>, 870 F. Supp. 655,

13

657 (D. Md. 1994) (state-law claims, including intentional infliction of emotional distress, not subject to equitable tolling since plaintiff "was free to pursue each of her common law claims in a court of law independent of the EEOC proceedings"). Accordingly, the court finds and rules that equitable tolling is not required under the facts as alleged herein and thus declines plaintiff's invitation to apply same.

### (3) The Doctrine of "Primary Jurisdiction"

Plaintiff's final argument in avoidance of the limitations bar asks the court to apply this jurisdiction's doctrine of "primary jurisdiction", wherein "'a court will refrain from exercising its concurrent jurisdiction to decide a question until it has first been decided by a specialized agency that also has jurisdiction to decide it.'" Allard, supra, 138 N.H. at 607, 644 A.2d at 72 (quoting Wisniewski v. Gemmill, 123 N.H. 701, 706, 465 A.2d 875, 878 (1983)). Under the present circumstances, however, this argument too is unavailing.

As an initial matter, the NHCHR's authority is circumscribed, inhering the "power to eliminate and prevent discrimination in employment," RSA 354-A:1, by "receiv[ing], investigat[ing] and pass[ing] upon complaints alleging violations of [RSA 354-A]," RSA 354-A:5. Thus, any investigation by the

14

NHCHR would be limited to the allegations of discrimination only, leaving unresolved plaintiff's allegations of wrongful termination, emotional distress, and enhanced compensatory damages.

Perhaps more importantly, however, is the reality that whatever determinations do get made by the NHCHR, in the first instance, or the superior court, upon subsequent RSA 354-A:22 judicial review, are divested of any effect once plaintiff seeks a remedy in federal court. Accord Tsetseranos, supra, ___ F. Supp. at ___, 1995 WL 427931, at *10; Doukas, supra, 882 F. Supp. at 1200; RSA 354-A:22, V ("If the claimant brings an action in federal court arising out of the same claims of discrimination which formed the basis of an order or decision of the commission, such order or decision shall be vacated and any appeal therefrom pending in any state court shall be dismissed.").

The court finds and rules that plaintiff's state-law claims are prescribed by the expiration of the applicable three-year limitations statute, as said state-law relief represents an avenue of recovery that is "separate, distinct and independent" from that available through Title VII. Since relief for the Title VII violations on the one hand and the state common-law violations, viz., the wrongful dischage, emotional distress, and enhanced compensatory damages claims, on the other is available

15

through discrete remedial vehicles, to which the principles of equitable tolling are inapplicable, defendant's motion for partial summary judgment as to plaintiff's state-law claims (Counts II-IV) must be and herewith is granted.[6]

## 3. Defendant's Motion to Strike (document 5)

Defendant now moves to strike plaintiff's jury demand, arguing that plaintiff's Title VII cause of action predates the enactment of the Civil Rights Act of 1991 and thus is not

---

[6]In making the rulings herein, the court is sensitive to the fact that plaintiff was not represented by counsel during the four years between her termination and the NHCHR predetermination conference. Indeed, it is largely due to this circumstance that plaintiff's Title VII claim retains its vitality. E.g., Hukkanen v. International Union of Operating Eng'rs, 3 F.3d 281, 286 (8th Cir. 1993) (Although "[p]laintiffs have some obligation to monitor the progress of their charges with the EEOC and do not have an absolute right to wait until the EEOC proceedings conclude," the fact that plaintiff "did not know she could request a right-to-sue letter, and obtained one soon after she retained her attorney and was informed of this option" amounted to excusable delay) (citations omitted).

However, what remains is that through the exercise of reasonable diligence, plaintiff could have avoided the four-plus-year delay and retained all of her supplemental state-law claims which have been barred today by the expiration of the limitations period. Once 180 days had passed from the filing of her charge with the EEOC, plaintiff would have been entitled to a right-to-sue letter. See 29 C.F.R. § 1601.28(a)(1) (1994). Since her initial filing of the charge was timely, receipt of the right-to-sue letter would have completed all of the prerequisites to filing suit in federal court and thus plaintiff's litigation would not have been burdened with the infirmities highlighted by today's rulings.

entitled to the new damage and jury provisions contained therein. Defendant's Memorandum of Law at 1-2. Plaintiff's main argument in objection to the requested relief is that her "right to a jury trial exists independent of" the Title VII claim due to the other "common law causes of action which entitle her to a jury trial." Plaintiff's Objection at ¶¶ 2-3.[7]

In <u>Landgraf v. USI Film Prods.</u>, ___ U.S. ___, 114 S. Ct. 1483 (1994), the Supreme Court considered and rejected the argument that the 1991 amendments to the Civil Rights Act of 1964, which expanded prior law by making a jury trial and punitive damages available to a Title VII plaintiff, were intended to be applied retroactively. <u>Id.</u> at ___, 114 S. Ct. at 1505-08. Specifically, the Court found "the jury trial option must stand or fall with the attached damages provisions." <u>Id.</u> at ___, 114 S. Ct. at 1505. Since the court further "found no clear evidence of congressional intent that § 102 [the new section on damages and jury trial] of the Civil Rights Act of 1991 should apply to cases arising before its enactment," <u>id.</u> at ___, 114 S. Ct. at 1508, all Title VII actions seeking equitable relief that arose prior to the November 2, 1991, effective date of the Act

_____

[7]As the court has herein granted defendant's motion for partial summary judgment as to said "common law causes of action," <u>supra</u> at 15-16, the once formidable strength of plaintiff's argument is significantly and drastically diminished.

were to be tried to the court without a jury.

Plaintiff correctly asserts "[w]hen a case presents claims for legal as well as equitable relief, a demand for a jury will not be stricken." Plaintiff's Objection ¶ 3 (citing Curtis v. Loether, 415 U.S. 189 (1974)); cf. Olin v. Prudential Ins. Co., 798 F.2d 1, 7 (1st Cir. 1986) ("where Title VII claims are mixed with other, legal claims, plaintiff is entitled to a jury trial on the *other* claims . . . ."), overruled in part on other grounds, Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 122-24 & n.3 (1st Cir. 1992). However, in light of this court's prior ruling on plaintiff's state-law claims, see supra part 2, the only claim that remains viable is plaintiff's Title VII claim and its attendant equitable remedies.

Well-established law in this federal circuit seems to compel the ruling that there is no Seventh Amendment right to trial by jury when the sole basis for relief is Title VII. See, e.g., Olin, supra, 798 F.2d at 7 ("Title VII, being essentially equitable in nature, does not carry with it the right to trial by jury"); Braverman v. Penobscot Shoe Co., 859 F. Supp. 596, 605 (D. Me. 1994) (Title VII "remedies are equitable, and have not historically required trial by jury"); Noriello v. Department of Mental Health, Retardation, and Hosps., 142 F.R.D. 581, 583 (D.R.I. 1991) ("the overwhelming precedent of the First Circuit

18

requires this court to follow the well established standard that Title VII claims are to be tried without a jury").

With due recognition of the precedent cited above, the court is further required to consider the two-part test delineated by the Supreme Court in <u>Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558 (1990), when evaluating the right to a jury trial in an essentially equitable action.[8]  <u>See</u> <u>Ramos v. Roche Prods., Inc.</u>, 936 F.2d 43, 50 (1st Cir.), <u>cert. denied sub nom.</u>, <u>Rossy v. Roche Prods., Inc.</u>, 502 U.S. 941 (1991).

As part of her prayer for relief, plaintiff asks the court to, inter alia,

> Direct Defendant, Foster's Daily Democrat, to place the Plaintiff in the position she would have occupied, but for its discriminatory treatment of her, and make her whole for all earnings she would have received but for Defendant's, Foster's Daily Democrat, discriminatory treatment, including, but not limited to, wages, pension and other lost benefits . . . .

---

[8]In order to distinguish between legal and equitable rights,

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.  <u>The second inquiry is the more important in our analysis.</u>  <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 42 (1989).

<u>Terry</u>, <u>supra</u>, 494 U.S. at 565 (emphasis added).

19

Complaint ¶ D.  Although the remedy of back pay may constitute a legal right, where monetary relief in the form of "damages are, in fact, a form of restitution and are '"incidental to or intertwined with injunctive relief,"'" Ramos, supra, 936 F.2d at 50 (quoting Terry, 494 U.S. at 570-71 (quoting Tull v. United States, 481 U.S. 412, 424 (1987))), then such a remedy is deemed equitable.

Under the instant circumstances, the court finds and rules that "the rights requested are primarily equitable-injunctive in nature, requiring . . . reinstatement, including backpay.  Hence, a jury trial does not seem to be required under *Terry*."  Id.; see also 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 38.27, at 38-235 (1995) ("Where back pay is sought in an action under Title VII of the Civil Rights Act to redress discrimination in employment, there is no right to a jury trial, since the remedy is equitable in nature.") (footnote omitted).  Accord McElroy v. Gaffney, 129 N.H. 382, 386, 529 A.2d 889, 891 (1987) ("It is well recognized that the right [to a jury trial under part I, article 20 of the New Hampshire Constitution] has no application in special, statutory, or summary proceedings unknown to the common law . . . or to purely equitable proceedings.") (citations omitted); 5 RICHARD V. WIEBUSCH, NEW HAMPSHIRE PRACTICE: CIVIL PRACTICE AND PROCEDURE § 2045(a), at 496 (1984) ("A party has no constitutional right to

20

the trial [by jury] of equitable issues.") (footnote omitted).

Since plaintiff's remaining prayer for relief only entitles her to equitable remedies, and further since none of plaintiff's remedies at law remain viable which would otherwise allow for a jury trial on those issues, the court hereby further finds and rules that plaintiff's Title VII claim must be tried to the bench without a jury. See Ramos, supra, 936 F.2d at 50 ("The First Circuit still adheres to its long-held rule precluding jury trials for equitable remedies under Title VII."). Accordingly, defendant's motion to strike jury demand must be and herewith is granted.

Conclusion

For the reasons set forth herein, the court grants defendant's motion for partial summary judgment as to the state-law claims (document 4) and defendant's motion to strike jury demand (document 5). Only plaintiff's Title VII claim remains viable, and said claim will go forward for trial to the bench rather than to a jury.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 24, 1995
cc:  Gemma M. Dreher, Esq.
     Robert E. Kirby, Esq.

21